Owen, Respondent, vs. Long, Appellant.

*September 8 — September 28, 1897.*

**Contracts: Conditional sales: Evidence of conversion: Instructions: Remarks of court.**

1. Where both copies of a contract signed in duplicate, by which the buyer agrees to pay $100 cash down and $300 in a specified time, are retained by the seller, and the $100 is not paid, such contract is not complete and does not become operative.

2. The statute requiring contracts of conditional sale to be filed in order to protect the seller's title against subsequent purchasers (sec. 2317, R. S.) applies only to completed contracts.   It has no application to a case where the purchaser, under a contract which has never become operative, surreptitiously obtains possession of the property and sells it to another, but the original owner may recover back the same from the second purchaser.

3. In an action to recover back such property from the second purchaser, it is not error to refuse to submit to the jury the question whether the plaintiff exercised diligence to retake possession of the property after it had been taken by the person who sold to the defendant, since it assumes that he had surrendered to such person the rightful possession thereof.

4. A remark made by the court in response to one made by counsel will not be deemed error, where no objection was made thereto, and no request was made that the jury be instructed to disregard it, and it does not appear that the appellant was prejudiced thereby.

5. If a party desires more definite instructions than are given he should make a request therefor.

6. Evidence that a person in the wrongful possession of the property of another sold the same without authority from him, and that the purchaser claims title thereto, is sufficient evidence of a conversion by him.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.* They contended, among other things, that the action would not lie against the defendant, who was an innocent purchaser, without a previous demand and refusal, and none was proved. *Barrett v. Warren,* 3 Hill, 348; *Gillet v. Roberts,* 57 N. Y. 28; 5 Am. & Eng. Ency. of Law, 528s; *Storm v. Livingston,* 6 Johns. 44. The contract was a conditional sale, and the plaintiff had lost all his claim to the property by failing to file the contract as required by sec. 2317, R. S. The evidence shows that the property was delivered pursuant to the contract of sale. The failure of the plaintiff to retake the property within a reasonable time after notice that the other party to the contract had taken possession, constituted a consent to such possession. *Pratt v. Peck,* 70 Wis. 620. The question whether he exercised reasonable diligence to retake it should have been submitted to the jury.

*Frederick A. Teall,* for the respondent.

CASSODAY, C. J.   This is an action of replevin to recover
possession of a portion of a portable sawmill, which the de-
fendant wrongfully and unlawfully refused to surrender to
the plaintiff, but which he had wrongfully converted to his
own use, to the plaintiff's damage in the sum of $600.   The
answer is a general denial.

It is undisputed that, in pursuance to a talk between the
plaintiff and one D. W. Blackburn, a contract was agreed
on and drawn in duplicate, November 14, 1894, which was
to the effect that *Owen* was the owner of the sawmill then
stored at Cameron, Wisconsin; that Blackburn desired to
lease or purchase the same; that it was therefore agreed
that *Owen*, in consideration of $100 to him in hand paid,
was to let Blackburn take all machinery, saws, and belts be-
longing to said mill (with certain exceptions), and remove
the same to Bruce, Wisconsin, *Owen* holding possession and
right of possession and the ownership in and to said mill;
that, when he should be further paid the sum of $300 and
interest from that date, and seven per cent. interest per
annum until paid, then he would give Blackburn a good
and sufficient bill of sale of said sawmill machinery, and
convey to him perfect title thereto; that Blackburn agreed
that he would purchase the mill of *Owen*, and pay the $300
and interest thereon on or before six months from date, and
that he would pay the same in lumber, as therein stated,
and would commence the delivery of the lumber within
ninety days from that date; that if, for any reason, Black-
burn failed to carry out the obligations of the contract, he
would deliver the mill property over to *Owen* or his agent,
at any time, on request so to do, and not claim any right or
right of possession to the same or any part thereof by reason
of the payment of $100, or for any other reason whatsoever;
that such contract was signed by the respective parties No-
vember 16, 1894, but both copies remained in possession of

*Owen;* that the $100 was not paid, and never has been paid; that *Owen* gave Blackburn a written order to get the mill, and to load it on the cars; that October 31, 1895, Blackburn gave to F. J. Otis & Co. a bill of sale of the mill, reciting a consideration of $175.26, which was the amount of the indebtedness Blackburn was then owing to F. J. Otis & Co.; that November 2, 1895, F. J. Otis & Co. gave to the defendant a bill of sale of the mill and other property, reciting a consideration of $250; that at that time the mill was set up for use.

At the close of the trial, the jury returned a special verdict to the effect: (1) That there was no agreement between the plaintiff and Blackburn whereby the latter was to take possession of the mill in question, and retain such possession until the purchase price was paid, other than the written agreement in evidence. (2) That it was not the agreement and understanding between *Owen* and Blackburn that Blackburn should have and retain possession of the mill until the purchase price was paid, before payment on the part of Blackburn of the $100. (3) That it was not the understanding between *Owen* and Blackburn that the order to permit the latter to load the mill at Cameron prior to the payment of the $100 should operate to give Blackburn the possession of the mill under the terms and conditions of the written agreement, without payment of the sum of $100 provided therein to be paid. (4) That it was the understanding between *Owen* and Blackburn that the written order to load the mill on the cars at Cameron should operate only as a permission to so load it prior to the payment of the $100. (5) That the firm of F. J. Otis & Co. did not, at the time they claim to have purchased this mill from Blackburn, have notice that it had been received from *Owen,* and was not paid for. (6) That the value of the mill that was the subject of the undelivered written agreement, at the commencement of this action, was $350. From the judgment entered upon

such verdict in favor of the plaintiff, the defendant brings this appeal.

After the contract was drawn and signed in duplicate, *Owen* retained the same, as stated, because Blackburn was unable to pay the $100 which the contract falsely recited had been paid. He never paid it, and the contract was not complete, and was not to become binding, until it should be paid. We think the trial court was justified in holding that such contract was never delivered, and never became operative. True, *Owen* agreed to give credit for the $300, but there is no claim that he agreed to give credit for the $100; and the jury find that there was no agreement other than the written agreement. The construction of the contract was for the court. Since that was the only contract or agreement between the parties, and both copies of that were retained by *Owen* because Blackburn was unable to make the cash payment as agreed, it is manifest that there was no sale, and no intention on the part of *Owen* to sell wholly on credit, unless the permission to load the mill on the car is to be regarded as a waiver of the cash payment and a surrender of the possession, which up to that time had been retained exclusively by *Owen*. But the jury found, in effect, that there was no such waiver, nor any such surrender, and such findings appear to be sustained by the evidence. It follows that Blackburn could not thus surreptitiously obtain rightful possession of the mill, and then, by means of the transfers mentioned, deprive *Owen* of the mill and his right of property therein, merely because *Owen* did not file with the clerk the written contract falsely reciting that the $100 in cash had been paid. Sec. 2317, R. S., presupposes a completed contract of sale of the character indicated therein, and binding upon the parties.

We perceive no error in refusing to submit to the jury the question whether the plaintiff exercised reasonable diligence to *retake possession* of the property *after* the same *was*

*taken possession of by Blackburn.* The question improperly assumed that *Owen* had surrendered the rightful possession to Blackburn.

In urging the court to direct a verdict in favor of the defendant, the defendant's counsel stated that *Owen* had already waived the payment of the $100 by delivering the possession of the mill to Blackburn. It is admitted by Blackburn, in his letter of February 28, 1895, that a Mr. Ritsch was to have paid *Owen* the $100 cash payment within a few days after the contract was signed, but that he perceived that he had not yet done so, and that he would have to look after the matter and pay it himself. In answer to such statement of counsel, the court, in effect, did state that there was no testimony that *Owen* delivered possession, and that the question for the jury would be one of damages. There is nothing to indicate that such statement was made to the jury, or intended to influence them. The charge is free from any such expressions. A jury is supposed to be governed by directions and instructions given to them, and not by remarks made to counsel on the argument of motions. *Gilchrist v. Brande,* 58 Wis. 192–195. Besides, there does not appear to have been any objection to the statement at the time, and the court was not requested to instruct the jury to disregard such statements, nor to charge otherwise on the subject; nor is it made to appear that the defendant was prejudiced by such statements.

Exception is taken because the court, upon the first question submitted, charged the jury to the effect that there was "no direct testimony that there was any other agreement — subsequent agreement — by which Blackburn was to retain such possession;" that "the only direct evidence in relation to any possession or control would be that of the giving of the order . . . to load the mill upon the car." We find no substantial error in these portions of the charge. If counsel desired any more definite instruc-

tions, they should have requested the same. Exceptions are taken to several other portions of the charge, but the brief makes no point upon any of such exceptions of sufficient importance to call for consideration.

It is contended that there is no evidence that the defendant ever wrongfully converted the property in question to his own use. But the sale by Blackburn, without authority, to F. J. Otis & Co., and the sale by the latter to the defendant, who claims title thereto, as stated, would seem to be sufficient evidence of conversion. *Steele v. Schricker,* 55 Wis. 134; *Tobin v. Deal,* 60 Wis. 87.

We find no substantial error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.